UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHYLISS HUGHEY,

    Plaintiff,                                           Civil Action No. 14-cv-10979

vs.                                                HON. BERNARD A. FRIEDMAN

H CORPORATION OF MID-MICHIGAN,

    Defendant.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This matter is presently before the Court on defendant's motion for summary judgment [docket entry 12]. Plaintiff has filed a response in opposition and defendant has filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion on the briefs. For the following reasons, the Court shall grant the motion.

### II. BACKGROUND

This is a Family Medical Leave Act ("FMLA") action. On October 19, 2011, plaintiff began working for defendant as a phlebotomist. Def.'s Mot., Ex. 2. During her employment, plaintiff applied for FMLA leave a number of times due to various health conditions. Defendant's FMLA policy required its employees to obtain a "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)" ("Certification") so that defendant could properly verify and classify employee absences as FMLA leave. *See id.*, Ex. 7. After plaintiff accrued a number of absences and failed to provide defendant with the proper Certifications, defendant terminated her by letter dated May 23, 2013. *Id.*, Ex. 5. Plaintiff argues that she was terminated in violation of the FMLA because she did provide defendant with the proper Certifications to classify her absences as FMLA leave. Pl.'s Resp., at 1-2.

Plaintiff first requested medical leave on October 12, 2012, to obtain lumbar injections on December 14, 2012, January 11, 2013, and January 25, 2013. Def.'s Mot., Exs. 8-9. Plaintiff obtained and defendant received a Certification dated December 27, 2012, regarding these three absences relating to the lumbar injections. *Id.*, Ex. 9. Defendant classified this leave as FMLA leave. *Id.*, Ex. 16. Plaintiff's medical records corroborate that she did receive lumbar injections on December 14, 2012, January 11, 2013, and January 25, 2013. *Id.*, Ex. 10.

In January 2013, plaintiff began to suffer from colitis. On January 30, 2013, plaintiff made her second request for FMLA leave, seeking to limit her work schedule to four days per week. *Id.*, Exs. 11-12. On February 6, 2013, plaintiff faxed FMLA paperwork to her primary care physician's office—Miguel Perez-Pascual, M.D.—for the purpose of receiving the proper Certification for this FMLA leave. *Id.*, Ex. 12. Dr. Perez-Pascual did not complete the Certification on plaintiff's behalf, and he did not restrict her to a four-day work week. *Id.* at 3.

During the month of February 2013, plaintiff was present for work each day until February 22, 2013. *Id.*, Exs. 13, 15. On that date, medical records show that plaintiff had a medical appointment with Dr. Perez-Pascual, where she received a CT scan of her abdomen and pelvis. *Id.*, Ex. 10. Plaintiff was also absent on February 25, 2013, when she went to the emergency room and was admitted as a patient at McLaren Regional Medical Center where she remained until discharged on February 28, 2013. *Id.* Following her release from the hospital, plaintiff missed work on March 1, 4-8, 14-15, 18-22, and 25-29, 2013. *Id.*, Ex. 15. In April 2013, plaintiff was absent on April 1-5, 8-12, 15-19, 22-26, and 29-30, 2013. *Id.* In May, she was absent on May 1-3, 6-10, 13-17, and 20, 2013. *Id.* After not returning to work on May 20, 2013, defendant terminated plaintiff by letter dated May 23, 2013. *Id.*, Ex. 5.

Plaintiff claims that Dr. Perez-Pascual prepared a series of Certifications on her behalf to account for some of her absences. Defendant received an April 11, 2013, Certification regarding plaintiff's colitis-related absences. *Id.*, Ex. 16. Dr. Perez-Pascual completed this Certification, which noted that plaintiff was incapacitated as a result of colitis from February 25 through February 28, 2013. *Id.*, Ex. 16. The certification also noted that Dr. Perez-Pascual treated plaintiff on March 22, 2013, and April 5, 2013. *Id.* Because this Certification did not address plaintiff's numerous other absences[1]—and plaintiff had not returned to work—defendant advised plaintiff that additional information was necessary to classify her unaddressed absences as FMLA leave. *Id.*, Ex. 1, at 39.

During discovery, plaintiff produced a second April 11, 2013, Certification purportedly signed by Dr. Perez-Pascual. *See id.*, Ex. 17. Although it is the general practice of Dr. Perez-Pascual to retain copies of all FMLA paperwork prepared on behalf of his patients, this Certification was not in his files kept on plaintiff. *Id.*, Ex. 18, at 16-18. Nonetheless, this Certification represents that Dr. Perez-Pascual had been treating plaintiff for colitis *since* January 14, 2013. *Id.*, Ex. 17. This contradicts the first April 11, 2013, Certification, which indicated that Dr. Perez-Pascual treated plaintiff on March 22, 2013, and April 11, 2013.[2] Plaintiff insists she provided a copy of the second April 11, 2013, Certification to defendant; defendant denies receiving this second Certification.

Dr. Perez-Pascual completed another Certification for plaintiff on May 17, 2013. *Id.*, Ex. 20. The portion of the May 17, 2013, Certification requiring medical personnel to "[e]stimate the beginning and ending dates for the period of incapacity" was completed as

---

[1] The April 11, 2013, Certification did not address absences on March 1, 4-8, 14-15, 18-21, 25-29, and April 1-4, 8-11, 2013. *Id.*, Ex. 16.

[2] Defendant notes that January 14, 2013, is a significant date; plaintiff served a suspension due to excessive absenteeism from work on that date. *Id.*, Ex. 3, at 000017.

3

having a start date of May 17, 2013, to three months. *Id*. The Certification also asked the physician to "[e]stimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period." *Id.* Dr. Perez-Pascual wrote "3 months." *Id*. It is unclear whether Dr. Perez-Pascual's response indicates that the incapacity spans the three months preceding May 17, 2013, or the three months following that date. However, in a letter of protest addressed to the Unemployment Insurance Agency, Dr. Perez-Pascual noted: "My patient was put on sick leave by me, at this time Family Medical leave paperwork was filled out on April 11th *with a return date the first week of June*." *Id.*, Ex. 21 (emphasis added).[3]

Defendant denies receiving the May 17, 2013, Certification. Plaintiff maintains that she stood next to Linda Mitchell—Dr. Perez-Pascual's employee—while Mitchell faxed the May 17, 2013, Certification to defendant; Mitchell denies that plaintiff stood next to her while she faxed the paperwork. *Id.*, Ex. 1, at 64-65; Ex. 18, 28-29. Plaintiff also claims Danielle Jones—defendant's Human Resources Director—confirmed that she received the faxed May 17, 2013, Certification. *Id.*, Ex.1, at 66. Jones denies that contention. *Id.*, Ex. 4, at 40-41.

On May 20, 2013, Jones advised plaintiff that defendant had not received FMLA documentation for a number of plaintiff's absences and that plaintiff must submit a proper FMLA Certification before the end of the business day. *Id.*, Ex. 1, at 74, 79, & 81. Plaintiff retrieved a copy of the second April 11, 2013, Certification from Dr. Perez-Pascual's office and hand-delivered it to defendant. *Id.*, at 81 & 82.

---

[3] Furthermore, in her letter of protest to the Unemployment Insurance Agency, plaintiff wrote that she was on medical leave "[f]rom April to June 2013" and that "[o]n June 1st I had a test done and finally got ahold of Danielle we spoke and I let her know that Dr. Perez was going to allow me to return to work in ten days." *Id.*, Ex. 21.

4

Plaintiff did not return to work on May 20, 2013, and defendant sent plaintiff a termination letter dated May 23, 2013.  *Id.*, Ex. 5.  Plaintiff was terminated for failure to submit the requisite FMLA paperwork and failure to return to work following FMLA leave.  *Id.*  Plaintiff did not contact defendant after receiving the termination letter.  *Id.*, Ex. 1, at 85.

Plaintiff commenced the instant action on March 6, 2014, alleging that defendant violated the FMLA by (1) terminating plaintiff for taking FMLA leave; (2) failing to restore plaintiff to the position she held when her leave commenced; (3) counting FMLA-qualified absences against plaintiff for termination purposes; and (4) failing to provide the applicable FMLA notices required under 29 CFR 825.300.  Compl. at 3.  Plaintiff seeks liquidated damages plus interest, attorney fees, and costs.  *Id.*

### III.  LEGAL STANDARD

Defendant seeks summary judgment under Fed. R. Civ. P. 56.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party.  *Celotex*, 477 U.S. at 323.  The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).  Once the moving party has met its initial burden, the burden shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV.  ANALYSIS

"The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)).  "Qualifying employees who return to work within [the] 12-week period are entitled to be reinstated to their previous position, or 'to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.'" *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir. 2006) (quoting 29 U.S.C. § 2614(a)(1)).

Plaintiff claims defendant interfered with her FMLA rights in violation of 29 U.S.C. § 2615(a)(1), under which it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." Pl.'s Resp. at 1. Specifically, plaintiff contends defendant interfered with her FMLA rights by ignoring the May 17, 2013, Certification and counting against plaintiff absences that should have been classified as FMLA leave. To prevail on her FMLA-interference claim, plaintiff must demonstrate that (1) plaintiff was an eligible employee; (2) defendant was an employer as defined under the FMLA; (3) plaintiff was entitled to leave under the FMLA; (4) plaintiff gave defendant notice of her intention to take leave; and (5) defendant denied plaintiff FMLA benefits to which she was entitled. *See Walton*, 424 F.3d at 485 (citing *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)). Even if plaintiff could satisfy these elements, however, defendant contends that plaintiff's claim fails because she cannot demonstrate she was prejudiced by the alleged denial of her FMLA rights. Plaintiff counters that she was prejudiced because defendant granted plaintiff only 7.125 days of FMLA leave and defendant failed to designate the remaining, unexcused absences as FMLA leave. Pl.'s Resp. at 6. The Court agrees with defendant.

Employees seeking relief under the interference theory must establish that they were prejudiced by the employer's alleged violation of the FMLA. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *Edgar*, 443 F.3d at 508. Plaintiff attempts to distinguish *Ragsdale* on the ground that the employee in that case was unable to return to work long after the expiration of the 12-week FMLA period, while plaintiff does not seek more than 12 weeks of leave in the instant case. Plaintiff's argument, however, is a distinction without a difference; even if plaintiff's absences were not technically designated as FMLA leave, plaintiff

received the substantive equivalence of 12 weeks of leave to which she was entitled under the FMLA. Indeed, absence number 62 occurred on May 20, 2013.[4] Plaintiff was further absent from work on May 21 (day 63), May 22 (day 64) and was terminated on May 23, 2013 (day 65). As a result, plaintiff received more than the 12 weeks (60 days) of leave to which she was entitled under the FMLA. *See* 29 U.S.C. § 2612(a)(1)(D).

Moreover, just as in *Ragsdale*, plaintiff does not allege that she would have taken less leave or intermittent leave had she been notified that her unexcused absences were counting against her FMLA leave entitlement. *See Ragsdale*, 535 U.S. at 90; *Collias v. Road Comm'n for Oakland County*, No. 09-cv-12483, 2010 U.S. Dist. LEXIS 134670, at *5 (E.D. Mich. Dec. 20, 2010). In fact, plaintiff makes the opposite argument—she wanted all of her absences to be classified as FMLA leave. Therefore, the Court finds that plaintiff has failed to demonstrate that she was harmed as a result of defendant's alleged interference with her FMLA rights. Accordingly, defendant is entitled to summary judgment.

Plaintiff's inability to return to work at the end of the 12-week FMLA period is also fatal to her claim. In *Edgar*, the court of appeals reiterated that "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." 443 F.3d at 506-07 (citing *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 784-85 (6th Cir. 1998)). Plaintiff did not return to work when her 12-week period of statutory leave expired on May 20, 2013.[5] Nor did plaintiff

---

[4] Plaintiff argues that the FMLA 12-week period expired on May 24, 2013, because "the unexcused leave started March 1, 2013." Pl.'s Resp. at 9. Plaintiff is mistaken. To calculate FMLA eligibility, defendant uses a rolling 12-month period measured backward from the date an employee uses FMLA. Def.'s Mot., Ex. 7. Plaintiff received the functional equivalent of FMLA leave, even if not technically designated as such, on May 17, 2013. Looking backward one calendar year, plaintiff undisputedly received 60 days of FMLA leave prior to that date, whether characterized as such or not.

[5] Defendant's motion states that the FMLA 60-day period expired on May 20, 2013. According to the Court's count of the absences, plaintiff's 61st FMLA-related absence occurred on May 17,

8

return to work on May 21, May 22, or May 23, 2013. Indeed, the record reveals that plaintiff remained unable to return to work at the conclusion of the 12-week period of statutory leave. On August 23, 2013, plaintiff formally protested a decision of the Unemployment Insurance Agency. In support of plaintiff's protest, Dr. Perez-Pascual submitted a letter to the Unemployment Insurance Agency stating in part: "My patient was put on sick leave by me, at this time [FMLA] paperwork was filled out on April 11, with the return date the first week of June." Def.'s Mot., Ex. 21. In a protest letter of her own, plaintiff claimed that "[o]n June 1st I had a test done and finally got ahold of Danielle [Jones]. . . and I let her know that Dr. Perez was going to allow me to return to work in ten days."[6] *Id.* Therefore, by plaintiff's and her primary care physician's own admission, plaintiff was unable to return to work when the 12-week statutory period expired on May 20, 2013.[7] Accordingly, defendant is alternatively entitled to summary judgment under *Edgar*. *See* 443 F.3d at 506-07, 514.

In sum, the Court concludes that defendant is entitled to summary judgment as result of (1) plaintiff's failure to demonstrate that she was harmed by defendant's alleged interference with her FMLA rights, *see Ragsdale*, 535 U.S. at 89; and (2) plaintiff's admitted inability to return to work at the expiration of the 12-week statutory leave period, *see Edgar*, 443 F.3d at 506-07, 514.

## V. CONCLUSION

For the reasons set forth above,

---

2013. However, because the May 20, 2013, date is a more generous cut-off date to plaintiff, the Court will accept this as the cut-off date.

[6] It is inconsequential that this evidence was unavailable when defendant decided to terminate plaintiff's employment. *See Edgar*, 443 F.3d at 513-14 (holding that "in entitlement cases, *Cehrs* and [29 C.F.R. § 825.214(b)] provide a defense to liability, regardless of whether the medical evidence revealing the employee's inability to return to work is available before or after the termination decision.").

[7] Importantly, even if the Court were to use plaintiff's proffered FMLA cut-off date of May 24, 2013, plaintiff was still unable to return to work on that date. As plaintiff admitted, she could not return to work until the first week of June.

IT IS ORDERED that defendant's motion for summary judgment [docket entry 12] is granted.

S/ Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: April 27, 2015
       Detroit, Michigan